IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Senior Judge Wiley Y. Daniel**

Civil Action No.  12-cv-00633-WYD-MEH

JEFFREY F. LEE,

    Plaintiff,

v.

THE SPECTRANETICS CORPORATION, a foreign corporation,

    Defendant.

**ORDER ON SUMMARY JUDGMENT**

I.    <u>INTRODUCTION</u>

THIS MATTER is before the Court on Defendant's Motion for Summary Judgment and Incorporated Brief filed January 18, 2013.  A response in opposition to the motion was filed on February 13, 2013, and a reply was filed on March 1, 2013.  For the reasons stated below, Defendant's Motion for Summary Judgment is granted.

By way of background, this is an employment case.  Plaintiff Jeffrey F. Lee ("Lee") asserts three claims against Defendant The Spectranetics Corporation ("Spectranetics"), his former employer, based on his termination from employment:  (1) disability discrimination in violation of the Americans with Disabilities Act ("ADA"), as amended by the ADA Amendment Act of 2008 ("ADAAA"); (2) disability discrimination in violation of the Colorado Antidiscrimination Act ("CADA"); and (3) retaliation under the ADA and CADA.

Spectranetics contends that no genuine issue of material fact exists as to Lee's claims, and that it is entitled to summary judgment as a matter of law. Lee asserts that genuine issues of material fact exist, requiring that the summary judgment motion be denied. I address the facts I find relevant in connection with my analysis of the claims.

II.   ANALYSIS

   A.   Whether Plaintiff Was Disabled Under the ADA and CADA

Spectranetics first argues that Lee was not disabled under the ADA, as amended by the ADAAA, during his employment with Defendant. That is because, according to Spectranetics, Lee's asserted disability did not and does not substantially limit any major life activity.

The alleged disability at issue is an injury to Lee's left shoulder. Lee claims to have experienced shoulder pain starting "[p]robably around 2008". (Mot. Summ. J. ["Mot."], Ex. 5, 44:11-14.)[1] Lee testified that his shoulder deteriorated over time, causing his pain to increase. (Resp. Mot. Summ. J. ["Resp."], Ex. A, 245:9-14.) However, Lee saw a Chinese massage therapist in July 2010, and reported to his doctor, Dr. Akizuki, that he experienced pain due to the therapist's hyperextension of his shoulders behind his back. (Mot., Ex. 19 at 50:15-24; Ex. 20.)

Lee was diagnosed with a left shoulder superior labral tear, or SLAP tear, as well as subacromial impingement syndrome, AC joint arthritis, and synovitis. (Mot., Ex. 5, 43:18-22; Resp., Ex. E.) The labral tear and the AC joint both served as pain generators for Lee. (Mot., Ex. 19, 18:1-19:8.) Dr. Akizuki noted, however, that the

---

[1] I have cited to the record only where the facts are in dispute.

impact of a tear in the labrum in the shoulder varies, "[b]ecause there are those people who are walking around and throw [sic] a baseball at 95 miles an hour who have labral tears, and they's doing great; and there are those people who did the rehab, did everything they could, and they're symptomatic." (*Id.* at 18:15-24.)

On July 27, 2010, Dr. Akizuki's nurse practitioner, Margaret Hermoso, recommended Lee attend physical therapy appointments two to three times per week for four to six weeks to treat his shoulder injury. Dr. Akizuki recommended continued physical therapy and a cortisone injection which Lee received and reported "relieved his pain for over a month." Lee attended the physical therapy appointments, and was not discouraged nor prevented from attending these appointments by Spectranetics. Also in the summer of 2010, Lee took classes to become a licensed massage therapist which required using his upper body strength to perform massages on his classmates and instructors.

During a July 2010 visit to Dr. Akizuki, Lee reported that he suffered radiating pain from his AC joint when touched in that area, which affected other regions of his shoulder. (Resp., Ex. A, 62:12-17.) Lee testified that he was in tremendous amounts of pain, to the point where he could not sleep at night and had "difficulty" with "some of the basic daily living things." (*Id.* 145:5-10, 245:11-13.) This included load-bearing as well as "daily activities from taking a shower to putting on a shirt in the morning. . . ." (*Id.* 245:11-13.)

Lee's physicians indicated that arthroscopic surgery could be used to repair the labral tear; however, the surgery was entirely elective and did not need to occur on any

particular date or within any particular timeframe.  Lee elected to have the surgery due to the pain he was in.  (Resp., Ex. A, 145:5-7.)

On November 10, 2010, Lee had a two hour long arthroscopic surgery to repair the labrum tear in his shoulder. (Mot., Ex. 5 at 11:6-8, 46:3-5; Ex. 19 at 20:5-7.)  The surgery was an outpatient procedure and Lee left the surgical center approximately one hour following completion of the surgery.

Dr. Akizuki testified that the surgery successfully repaired Lee's labral tear. (Mot., Ex. 19 at 39:19-22.)  Lee did not have any physician-imposed restrictions on his activities following his surgery.  (*Id.*, Ex. 5 at 25:7-9, 51:10-15; Ex. 19 at 42:10-18, 58:21-59:2, 63:20-64:7, 66:12-15.)  Dr Akizuki did recommend, however, that Lee take off the day of surgery and at least the following week for recovery.  (*Id.*, Ex. 19, 65:13-66:7.)  Lee testified that post-surgery he had loss of strength, weakness and impaired range of motion in his shoulder.  (Resp., Ex. A, 157:6-9.)  He also testified that his sleep continued to be impaired as he was limited in the positions he could be in comfortably, although he acknowledged that effects dissipated somewhat in the months after surgery.  (*Id.* 159:3-160:3.)

Lee did not work on November 11, 2010, the day following his surgery.  He returned to work on November 14, 2010.  Lee admits that he performed the essential functions of his job, without accommodation, post-surgery.  He also admits that he never submitted to Spectranetics any medical documentation related to his shoulder condition, a description of his symptoms, nor any restrictions on his activities.[2]  Lee

---

[2] Further, when Lee applied for employment with various companies after his termination, he did not inform any prospective employer of his alleged disability nor request any accommodation.

-4-

notes, however, that he returned to work on November 14, 2010 and was terminated on November 19, 2010, and that during that time, no one requested any information regarding his shoulder condition.

Turning to my analysis, to state a prima facie case of discrimination under the ADA, Lee must establish that: (1) he is disabled; (2) he was qualified, with or without reasonable accommodation, to perform the essential functions of his job; and (3) his employer discriminated against him because of his disability.  *Robert v. Bd. of County Comm'rs of Brown Cnty.*, 691 F.3d 1211, 1216 (10th Cir. 2012).  To be disabled within the meaning of the ADA, Lee must show: (A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment.  *Wilkerson v. Shinseki*, 606 F.3d 1256, 1262 (10th Cir. 2010); 42 U.S.C. § 12102 (2012).

In this lawsuit, Lee only claims he was actually disabled, not that he was regarded as disabled by Spectranetics or that he had a record of such an impairment. The relevant determination is whether Lee had a disability at the time of the adverse employment decision.  *Koller v. Riley Riper Hollin & Colagreco*, 850 F. Supp. 2d 502, 513 n. 4 (E.D. Pa. 2012); *see also Carter v. Pathfinder Energy Servs.*, 662 F.3d 1134, 1145 (10th Cir. 2011) (determining whether impairment was substantially limiting at the time the plaintiff was fired).

To establish a physical or mental impairment that substantially limits one or more major life activities, "a plaintiff must 'articulate with precision' both h[is] impairment and the major life activity it substantially limited." *Johnson v. Weld County, Colo.*, 594 F.3d 1202, 1218 (10th Cir. 2010).  "An impairment is substantially limiting when it renders an

individual either unable or significantly restricted in h[is] ability to perform a major life activity compared to the average person in the general population." *Id.* Three factors govern whether an impairment substantially limits a major life activity: "'(1) the nature and severity of the impairment; (2) the duration or expected duration of the impairment; and (3) the permanent or long term impact or the expected permanent or long term impact of or resulting from the impairment.'" *Carter*, 662 F.3d at 1145 (quoting *Doebele v. Sprint/United Mgmt. Co.,* 342 F.3d 1117, 1130 (10th Cir.2003)). Though "substantially limits" is a less demanding standard post-ADAAA, "[n]ot every impairment will constitute a disability within the meaning of this section." 29 C.F.R. § 1630.2(j)(1)(ii).

I agree with Spectranetics that summary judgment is appropriate on the ADA claim because Lee has not shown that his shoulder condition substantially limits any major life activity. First, it is undisputed that Lee's condition did not prevent him from performing the essential functions of his job either pre- or post-surgery. Despite any symptoms he experienced from his shoulder condition, Lee was able to continue working without any substantial problems from July 2010 through November 2010.

Lee contends, however, that he was substantially limited in the area of sleep, as the condition of his shoulder substantially impaired his ability to sleep to the point where he could not sleep at night. He also contends that it interfered with his ability to reach above his shoulder, and to care for himself. I note that Lee's testimony does not refer to reaching above his shoulder specifically, just to problems with daily activities like taking a shower and putting a shirt on in the morning. Even if I assume that this shows

Lee's reaching was limited, I find that Lee was not under a disability as defined by the ADA during his employment with Spectranetics or at the time of his termination.

Sleeping, reaching and caring for oneself are all recognized as a major life activities under the ADA. 42 U.S.C. § 12102. Caring for oneself "'encompasses normal activities of daily living; including feeding oneself, driving, grooming, and cleaning home.'" *Carter*, 662 F.3d at 1143 (quoting *Holt v. Grand Lake Mental Health Ctr., Inc.*, 443 F.3d 762, 767 (10th Cir.2006)). As to sleeping, while Lee testified that he had trouble sleeping because of his shoulder condition, he did not present any evidence, "as []he must, suggesting how h[is] difficulties sleeping compare to those of the average person in the general population (many of whom, of course, have nightmares or trouble sleeping)." *Johnson*, 594 F.3d at 1218 n. 10.

Similarly, Plaintiff presented no evidence as to how his difficulties in reaching or caring for himself compare to the average person in the general population. *See Allen v. Southcrest Hosp.*, 455 F. App'x 827, 832-33 (10th Cir. 2011) (it was the plaintiff's "burden to make more than a conclusory showing that she was *substantially* limited in the major life activity of caring for herself as compared to the average person in the general population") (emphasis in original); *Rhodes v. Langston Univ.*, 462 F. App'x 773, 779 (10th Cir. 2011) (finding that Rhodes' partial left leg "amputation and use of a prostheses was not substantially limiting, even though Rhodes argued that he had some difficulty walking and caring for himself, as he "did not present any evidence to determine the impact of his amputation and how his ability to walk using the prosthesis compares with the walking ability of the general population"). Testimony that taking a shower or putting on a shirt was difficult does not satisfy this burden. *See id*. Lee did

not present evidence that he was unable to do these activities or even that he required assistance with such activities.

Similar to the *Allen* case, Lee's "allegations and evidence on this point were conclusory at best." 455 F. App'x at 833. Lee's claims of being substantially limited in sleeping, reaching or caring for himself were "insufficiently developed and insufficiently supported by the record." *Id.* It was his "summary judgment responsibility to present evidence sufficient to meet h[is] burden of production on the 'disability' claim" of his prima facie case", *id.*, and he did not do so.

Moreover, I find that Lee has not presented sufficient evidence that his shoulder impairment "was both long-term and severe at the time that he was fired." *Carter*, 662 F.3d at 1145. As the *Koller* court noted:

> [T]he ADAAA was adopted to specifically address certain impairments that were not receiving the protection that Congress intended – cancer, HIV-AIDS, epilepsy, diabetes, multiple sclerosis, amputated and partially amputated limbs, post-traumatic stress disorder, intellectual and developmental disabilities – *not minor, transitory impairments*, except if of such a severe nature that one could not avoid considering them disabilities . . . Although Congress sought to abrogate the "significantly or severely restricting" requirement as it pertained to the "substantially limits" factor of the ADA, the ADAAA still requires that the qualifying impairment create an "important" limitation.

*Id.*, 850 F. Supp. 2d at 513 (emphasis added).

Lee's surgery occurred before he was terminated, and he was released from surgery without any physician-imposed restrictions. While Lee testified to loss of strength, weakness and impaired range of motion in his shoulder after the surgery, he has not presented an evidence that these were severe or long-term. Further, while he testified to some continued sleep problems, he noted that this dissipated somewhat in

the months since surgery.  A temporary condition post-surgery "does not qualify as a disability.  *Rhodes v. Langston Univ.*, 462 F. App'x 773, 779 (10th Cir. 2011).[3]

Plaintiff is also not disabled under the CADA for similar reasons.  The ADA and the CADA are, essentially, parallel statutory schemes that address disability discrimination."  *Fleites v. Pueblo Med. Investors*, LLC, No. 07-cv-2658-REB-MJW, 2008 WL 4371924, at *1 (D. Colo. Sept. 22, 2008).  Thus, Colorado courts rely upon ADA case law in analyzing CADA claims.  *See Gamble v. Levitz Furniture Co.*, 759 P.2d 761, 763-766 (Colo. App. 1988).  However, CADA has not been amended to broaden the class of conditions which constitute disabilities as the ADA was by the ADAAA in 2008.  Therefore, the issue of whether Lee's shoulder condition constitutes a "disability" under the CADA must be determined under pre-ADAAA case law.

I first note that, as with the ADA, a disability under the CADA "means 'a physical impairment which substantially limits one or more of a person's major life activities . . . .'"  *Ward v. Dep't of Natural Res.*, 216 P.3d 84, 94 (Colo. App. 2008) (quoting C.R.S. § 24–34–301(2.5)(a) (2007)).  Here, as with the ADA, Lee has not shown that his impairment substantially limits one or more major life activities.  Moreover, I agree with

---

[3] *See also Koller*, 850 F. Supp. 2d at 509-10, 513-14 (finding plaintiff's torn anterior cruciate ligament which required surgery "simply [did] not rise to the level necessary to infer any disability under the ADA" despite plaintiff's allegations that he was in pain and had trouble staying awake and concentrating, had difficulty moving and driving, and needed to attend physical therapy appointments twice a week which caused him to be tardy to work); *Zurenda v. Cardiology Associates, P.C.*, No. 3:10-CV-0882, 2012 WL 1801740, at *8 (N.D.N.Y. May 16, 2012) (holding that plaintiff's medical condition necessitating knee surgery did not constitute a disability because disability under the ADA "'does not include temporary medical conditions, even if those conditions require extended leaves of absence from work because such conditions are not substantially limiting'") (quotations omitted); *Cf. Butler v. BTC Foods Inc.*, No. 12-492, 2012 WL 5315034, at *3 (E.D. Pa. Oct. 19, 2012) (noting "an employee's inability to work for a period after recovering from surgery does not necessarily support a finding that Plaintiff has a disability under the ADA [as amended by the ADAAA]" and concluding plaintiff's double hernia was nothing more than a "one-time occurrence").

Spectranetics that Lee's shoulder condition does not constitute a disability under the stricter standards of the CADA because it was a temporary, minor impairment which does not rise to the level of a substantially limiting disability. *See, e.g., Sutton v. Lader*, 185 F.3d 1203, 1209 (11th Cir. 1999) ("A temporary inability to work while recuperating from surgery is not . . .a permanent or long-term impairment and does not constitute evidence of a disability covered by the Act."); *Gutridge v. Clure*, 153 F.3d 898, 901-902 (8th Cir. 1998) ("Disability under the ADA requires permanent or long-term impairments, . . .and impairments while recovering from surgery are not evidence of a permanent disability."); *Thill v. Olmsted County*, No. 08-CV-4612, 2010 WL 3385234, at *4 (D. Minn. Aug. 24, 2010) ("A temporary condition such as the need to recover from shoulder surgery does not qualify as a 'disability'. . ."); *Hennagir v. Utah Dep't of Corr.*, No. 05CV1043, 2008 WL 1808695, at * *7 (D. Utah Apr. 21, 2008) ("Temporary limitations from those surgeries are insufficient to meet Plaintiff's burden under the ADA . . . .Even if the limitation on lifting was permanent, an 'inability to lift heavy objects does not constitute a substantial limitation on a person's overall ability to lift.'") (quotation omitted).

Finally, I also find that Lee has not shown that Spectranetics discriminated against him due to his disability. In that regard, the evidence shows that the decision-makers were unaware that Lee had a medical condition that substantially limited a major life activity, as Lee never informed his supervisors, Renee Boehme or Greg Cook ("Cook"), of this. While Lee asserts that he told Cook that he was in tremendous pain which was affecting his performance at work, his deposition testimony does not support this. Instead, while he testified he told Cook he was having pain in his shoulder (Resp.,

Ex. A, 109:23-25, 153:10-17), Lee could not point to any conversation where he told Cook it was affecting his performance at work. (*Id.*) Lee did testify that he told Cook that the "pain was so severe that it was affecting normal function, sleep, et cetera" and "daily functions" such as his ability to concentrate, lift things, push things, and move things around. (*Id.* 153:14-154:15.) However, I do not believe that rises to the level of telling his employer that he had a disability that substantially limited a major life activity, particularly because he did not ask for any assistance with these things. (*Id.* 154:16-18.) Lee also never submitted any medical documentation or restrictions related to his shoulder condition or exhibited difficulty performing or inability to perform any of his job duties. (*Id.*, Ex. 5 at 25:7-9, 51:10-15, 189:15-20; Ex. 19 at 42:10-18, 58:21-59:2, 63:20-64:7, 66:12-15.)

Lee also has not pointed to any reasonable accommodation he requested but was denied by Spectranetics. While he testified that he asked Cook for assistance with taking leave for the surgery and that this was denied, the evidence does not support that leave was denied. Instead, it is undisputed that Lee took leave for the surgery, and Lee admitted that Cook did not tell him he could not take time off for surgery or discipline him for that. (Resp., Ex. A, 149:3-18; 163:14-17.) Lee also admitted that Cook did not deny his request for accommodations needed after the surgery—time off for physical therapy and follow up appointments. (*Id.* 163:18-25.) Moreover, there is no evidence that Lee informed Cook that the leave he requested was an accommodation for a perceived disability. Therefore, he cannot prevail on his "failure to accommodate" theory. *See Montoya v. State of N.M.*, No. 99-2126, 2000 WL 216593, at *6 (10th Cir. 2000) ("An employer is not expected to accommodate disabilities of which it is unaware

and, '[i]n general, [ ] it is the responsibility of the individual with a disability to inform the employer that an accommodation is needed.'") (quotation omitted); *Gantt v. Wilson Sporting Goods Co.*, 143 F.3d 1042, 1046-47 (6th Cir. 1998) (because plaintiff made no request for accommodation, the district court properly found that she failed to create an issue of fact as to whether or not the company failed to reasonably accommodate her, noting the "employer is not required to speculate as to the extent of the employee's disability or the employee's need or desire for an accommodation").

      B.    <u>Whether Plaintiff's Retaliation Claim is Viable</u>

A prima facie case of retaliation under the ADA and the CADA requires: (1) that the employee engaged in protected activity, (2) that a reasonable employee would have found the challenged action materially adverse, and (3) that a causal connection existed between the protected activity and the materially adverse action. *Jones v. UPS, Inc.*, 502 F.3d 1176, 1193 (10th Cir. 2007). If Lee establishes these factors, the burden shifts to Spectranetics to produce a legitimate, nondiscriminatory reason for the adverse action. *See EEOC v. Picture People, Inc.*, 684 F.3d 981, 988 (10th Cir. 2012). If Spectranetics can do so, the burden shifts back to Lee to demonstrate pretext, which requires a showing that the proffered non-discriminatory reason is "unworthy of belief." *Id.*; *Johnson*, 594 F.3d at 1211.

In the case at hand, I have already found that Lee was not disabled for purposes of the ADA or CADA. However, "unlike an ADA discrimination suit, a plaintiff in an ADA retaliation suit need not show he suffered from an actual disability as long as he had a 'reasonable, good faith belief the statute ha[d] been violated.'" *Wehrley v. Am. Family Mut. Ins. Co.*, 513 F. App'x 733, 740 (10th Cir. 2013) (quoting *Selenke v. Med. Imaging*

*of Colo.,* 248 F.3d 1249, 1264 (10th Cir.2001)). I find, however, that I need not get to that issue because I find that Lee has not shown that he "had a reasonable, good faith belief that he was opposing discrimination prohibited by Title VII" or "reporting conduct prohibited by Title VII." *Held v. Ferrellgas, Inc.,* 505 F. App'x 687, 690 (10th Cir. 2012).

It is undisputed that Lee did not actually complain of discrimination while at Spectranetics. "Although no magic words are required, to qualify as protected opposition the employee must convey to the employer his or her concern that the employer has engaged in a practice made unlawful by the [ADA or the CADA]." *Hinds v. Sprint/United Mgmt. Co.*, 523 F.3d 1187, 1203 (10th Cir. 2008) (concluding general complaints about unfair treatment did not constitute protected activity for the purposes of establishing a prima facie case of retaliation).

Lee claims, however, as protected activity that he requested accommodation of Cook through his request that Cook help arrange leave for the surgery. A request for reasonable accommodation can constitute protected activity under the ADA, if the plaintiff reasonably believed he was entitled to an accommodation. *Jones v. U.P.S., Inc.*, 502 F.3d 1176, 1194 (10th Cir. 2007). Here, however, there is no evidence that Lee informed Cook that the leave he requested was an accommodation for a perceived disability, or complained that Cook's failure to help him was discriminatory. "Without knowledge of [Lee's] belief that he is entitled to an accommodation for a perceived disability, [Cook] could not interpret" Lee's request as a request for a accommodation." *Id.*; *see also Peterson v. Utah Dep't of Corr.*, 301 F.3d 1182, 1188-89 (10th Cir. 2002) (explaining that employer must know of employee's protected activity in order to engage in unlawful retaliation). As further evidence that Spectranetics did not know that this

was protected activity, Lee admitted that he did not follow Spectranetics' policy that required him to contact Human Resources if he felt he was discriminated against or denied an accommodation. (Resp., Ex. A, 110:21-111:6.) In other words, he did not make a complaint about discrimination, harassment, or retaliation under Spectranetics' complaint reporting policy. (Mot., Ex. 5 at 108:14-16, 110:8-12, 169:10-14, 191:10-13.)[4]

Finally, Lee does not claim or show that Cook's failure to help him arrange leave was discriminatory or based upon his alleged disability. Lee did not "present evidence that his supervisors knew of his belief that he was entitled to a reasonable accommodation under the ADA based on a perceived disability." *Jones*, 502 F.3d at 1195.[5] Thus, he cannot establish a causal link between his allegedly protected activity and the failure to allegedly accommodate him. Accordingly, I find that summary judgment is also appropriate on the retaliation claim.

III.   CONCLUSION

Based upon the foregoing, it is

ORDERED that Defendant's Motion for Summary Judgment filed January 18, 2013 is **GRANTED**. Judgment shall enter in favor of Defendant and against Plaintiff on all claims. Accordingly, it is

---

[4] While Lee asserts that he did not have an opportunity to complain about discrimination or retaliation, he presents no evidence to support this. For example, as noted by Spectranetics, Lee could have complained at the time Cook allegedly failed to arrange for his leave for surgery, during the telephone conference Lee had with Renee Boehme and Cook on November 17, 2010, or at the time he was informed his employment was being terminated.

[5] As discussed earlier, it is undisputed that Lee took leave for the surgery, and that Cook did not tell him he could not take time off for surgery or discipline him for taking leave. (Resp., Ex. A, 149:3-18; 163:14-17.) Cook also did not deny Lee's request for accommodations needed after the surgery—time off for physical therapy and follow up appointments. (*Id.* 163:18-25.)

ORDERED that the Final Trial Preparation Conference set for October 23, 2013, at 4:00 p.m., and the four-day jury trial set to commence Monday, November 18, 2013, are **VACATED**.

Dated: September 27, 2013

BY THE COURT:

s/ Wiley Y. Daniel
Wiley Y. Daniel
Senior United States District Judge

.